27 So.2d 473

### LOUISVILLE & N. R. CO. v. BLACK CREEK COAL & COKE CO.

### 6 Div. 377.

Supreme Court of Alabama.
Oct. 10, 1946.

Chas. H. Eyster, of Decatur, and White E. Gibson, of Birmingham, for appellant.

282

Benners, Burr, Stokely & McKamy, of Birmingham, for appellee.

LAWSON, Justice.

This is a suit by the Louisville & Nashville Railroad Company, a corporation, against the Black Creek Coal & Coke Company, a corporation, to recover damages for the alleged breach of a contract, executed on or about November 12, 1925.

The defendant's demurrer to the complaint was sustained by the trial court; in consequence, the plaintiff suffered a nonsuit, and has appealed as authorized by the statute. § 819, Title 7, Code. 1940.

As finally amended, the complaint contained four counts, but for the purposes of this appeal a consideration of Count Three and the exhibits thereto will suffice.

In 1902, the Lehigh Coal Company owned coal lands in Blount County, Alabama, which were not served by a railroad, so on January 2nd of that year they entered into a contract with the Long Branch Coal Railroad Company for the construction and operation of a railroad approximately seven miles in length leading from the said coal properties to a certain point on another railroad. In order to pay the Long Branch Coal Railroad Company the cost of preparing the roadbed for the superstructure, the Lehigh Coal Company agreed to pay a rate five cents per ton greater than might be received from the transportation of coal from mines at or in the vicinity of Warrior Station, Alabama, such rate to continue until sufficient tonnage had been so transported as to repay the cost of preparing the roadbed for the superstructure, together with interest thereon. The Lehigh Coal Company was given the option of paying each month an amount equal to the number of tons transported during that month, multiplied by five cents. After the cost of preparing the roadbed had been repaid in the manner above stated, the rate for transporting the coal was to be but two cents per ton greater than might at the same time be received for transporting coal from the mines at or in the vicinity of Warrior Station to the same points. It was provided in the said contract that in the event mines should be opened by other parties

along the railroad, the owners of such mines should not be given more favorable terms than were granted in the contract to the Lehigh Coal Company.

A railroad was constructed in accordance with the terms and provisions of said contract. It appears that the Louisville & Nashville Railroad Company now owns or controls said railroad and that the Long Branch Coal Railroad Company, prior to November 12, 1925, transferred, assigned and delivered to the Louisville & Nashville Railroad Company all of its rights under the said contract of January 2, 1902, heretofore summarized.

In 1925 the Black Creek Coal & Coke Company owned coal properties at or near Lehigh, in Blount County, Alabama, which were located approximately 1,468 feet distant from the railroad constructed by Long Branch Coal Railroad Company under its 1902 contract with Lehigh Coal Company. On November 12, 1925, the Black Creek Coal & Coke Company entered into a contract with the Louisville & Nashville Railroad Company for the construction of railroad tracks, 1,468 feet in length, leading from its coal properties to the Long Branch Coal Railroad and for the transportation of its coal over the said Long Branch Coal Railroad to points on other railroads. Reference is made in this contract to the rate provisions contained in the 1902 contract of Long Branch Coal Railroad Company and Lehigh Coal Company. The contract contains the following provisions:

"(22) Said Black Creek Coal & Coke Company, second party, will receive like benefit from the construction of the Long Branch Coal Railroad to that enjoyed by the Lehigh Coal Company. It is agreed that the second party shall have the benefit of the same rates as those given the Lehigh Coal Company in said contract of 2nd day of January, 1902 and quoted above.

"Therefore the rates herein quoted of five (5¢) cents per ton greater than may at the same time be received by the first party for transporting coal from the mines in the vicinity of Warrior Station, Alabama, shall continue in effect until the number of tons transported for the second party, multiplied by five (5¢) cents per ton, added to the number of tons transported for the Lehigh Coal Company multiplied by five (5¢) cents per ton, will yield an amount equal to the amount expended in preparing the roadbed of the Long Branch Coal Railroad for the superstructure, together with interest on said amount at six per cent (6%) per annum."

The plaintiff alleges that at the time of the filing of this suit the cost of preparing the roadbed of the Long Branch Coal Railroad had not been repaid; that during the years 1926 to 1932 the Black Creek Coal and Coke Company had transported over the system of tracks of the Long Branch Coal Railroad Company from its coal mines at or near Lehigh to points named in the contract a total of 53,978.55 tons of coal, "for which the Black Creek Coal & Coke Company owes the plaintiff as payment on the cost of preparing the superstructure of the Long Branch Coal Railroad the sum of five cents per ton for each ton of coal transported over said system of tracks," that under the contract the Black Creek Coal & Coke Company became indebted to plaintiff in the sum of $2,698.93 up to December 31, 1932, which said sum of money the said Black Creek Coal & Coke Company owes plaintiff and which remains due and unpaid.

By amendment to Count Three plaintiff alleges that at the time of the execution of the 1925 contract both parties thereto knew that the indebtedness of Lehigh Coal Company to the Louisville & Nashville Railroad Company under and by virtue of the contract of January 2, 1902, was unpaid; and that it was known to both parties that they could not legally contract for a tariff or rate for transporting coal over said railroad at a rate in excess of that fixed and established by the tariff of rates on file with the Alabama Public Service Commission, and that any contract between the parties fixing a different and higher rate for the transportation of coal between said points would be in violation of the statutes of the State of Alabama, and would be illegal and unenforceable; that the Black Creek Coal & Coke Company, in entering into said contract of November

12, 1925, recognized that there was a balance on the indebtedness of the Lehigh Coal Company to the Louisville & Nashville Railroad Company and agreed to participate in the payment of said balance in the proportion which it received benefits from the use of the railroad and agreed to pay for said benefits in the proportion which it received the same and agreed that the benefits derived from it would be on the basis of five cents per ton for coal transported over said railroad; that said five cents per ton did not become and was not a part of the rate for the transportation of coal, but was an agreed amount which said Black Creek Coal & Coke Company agreed to pay "on the obligation incurred by it at the time of attaching to the lines built and constructed under the contract of 1902."

Defendant's demurrer takes the point, among others, that it affirmatively appears from the complaint that the contract upon which plaintiff's cause of action is founded is illegal and void in that it calls for the payment by defendant to plaintiff of a rate not in accordance with the tariffs or rates published and on file with the Alabama Public Service Commission.

Plaintiff in effect admits that the demurrer was correctly sustained if the five cents per ton charge which it seeks to collect from defendant is considered to be a tariff or rate for transportation.

Plaintiff's position appears in the following quotation from its brief filed here: "Whether or not the judgment of the lower court is correct depends, in our view of the case, solely upon the construction and interpretation this court places upon the contract made between Long Branch Coal Company, First Party, and Lehigh Coal Company, Second Party, on the 2nd day of January, 1902; and the agreement between L. & N. Railroad Company, First Party and Black Creek Coal & Coke Company, Second Party, of date November 12, 1925. The L. & N. Railroad Company is the transferee, assignee and successor of Long Branch Company. The two contracts of 1902 and 1925 are to be construed, so far as the parties here are concerned, as constituting one contract obligating the appellee to pay a fixed and definite amount on the costs of the superstructure, bridges, trestles, etc., of the railroad."

But we are not here concerned with the validity of the 1902 contract. The defendant was not a party to that contract and it was not made a part of the 1925 contract to which defendant was a party. The 1902 contract is referred to in the 1925 contract but the defendant did not assume the liability, if any, of the Lehigh Company thereunder.

We are here concerned solely with the validity of the 1925 contract, the alleged breach of which brought about this action.

It is admitted that plaintiff was a "transportation company" as defined in §§ 9625 and 9626, Code of 1923. § 9629, Code of 1923, Code 1940, Tit. 48, § 104, provided that the Public Service Commission of Alabama was charged with the duty of "supervising, regulating, and controlling, all transportation companies doing business in this state, in all matters relating to the performance of their public duties, and their charges therefor." Said section contains the further provision: "All *rates, charges,* classifications, rules, and regulations adopted or acted upon by any transportation company inconsistent with those prescribed by the commission acting within the scope of its authority, or inconsistent with those prescribed by any statute, shall be unlawful and void." (Emphasis supplied.)

§ 10017, Code of 1923, Code 1940, Tit. 48, § 111, provided for the filing with the Public Service Commission of the "schedule of rates" and § 10023, Code 1940, Tit. 48, § 114, provided, "It shall be unlawful for any railroad, or other common carrier subject to the provisions of this article, to charge, demand, collect or receive a greater or less *compensation* for the transportation of passengers or property, or for any service in connection therewith, than is specified in such printed schedule, including schedules of joint rates, as may at the time be in force, except as provided by law or the public service commission, and the rates, fares, and charges named herein shall be the lawful rates, fares and charges when approved by the public service commission, but the commission may prescribe such changes in

the form in which the schedules shall be issued by the common carrier as may be found expedient." (Emphasis supplied.)

§ 10028, Code of 1923, Code 1940, Tit. 48, § 119, provided against unjust discrimination which is declared to be unlawful. It also provided that a railroad company or other common carrier is guilty of unjust discrimination when it directly or indirectly, or by special rate, rebate, drawback, or by means of false billing, false classification, false weighing, false report of weights, or by any device whatsoever charges, demands, collects or receives from any person, firm, company or corporation, *a greater or less compensation* for any service rendered or to be rendered by it for the transportation of persons or property, or for any service in connection therewith, than that prescribed in the published tariffs.

As we understand plaintiff's contention, it is that the defendant at the time it entered into the 1925 contract knew that the Lehigh Coal Company had not discharged its obligation to plaintiff under the 1902 contract and with that knowledge voluntarily committed itself to make an equitable contribution to the liquidation of the Lehigh Coal Company indebtedness and that the amount of this contribution was to be determined by the number of tons of coal mined and shipped by defendant over the Long Branch Coal Railroad.

But the defendant at the time it entered into the 1925 contract was under no obligation to repay the plaintiff the unpaid portion of the cost of preparing the roadbed of the Long Branch Railroad Company for superstructure. True, it needed the use of this existing railroad facility of plaintiff in connection with the 1468 feet of new track, in order to get its coal to other railroad facilities, and in order to obtain such transportation agreed to pay a rate, charge or compensation different from that prescribed by the schedule of rates published and on file with the Alabama Public Service Commission.

■ The rule is that the legal rights existing between a transportation company under the jurisdiction of the Alabama Public Service Commission and a shipper as to charges for transportation are measured by the tariffs or rates published and on file with the Alabama Public Service Commission. No deviations from such published rates can be made on any pretext and an agreement, the purpose of which is to permit collection of charges at other than the published rates, is of no binding force or effect. Emerson v. Central of Georgia R. Co., 196 Ala. 280, 281, 72 So. 120, L.R.A. 1916F, 120; Birmingham Packing Co. v. Birmingham Belt R. Co., 201 Ala. 180, 77 So. 706; Kanotex Refining Co. v. Atchison, T. & S. F. R. Co., 142 Kan. 139, 46 P. 2d 16.

■■ Plaintiff's argument that the presumption in favor of the legality of the contract should be favored, and that where it is susceptible of two constructions, one of which is legal, and the other not, that construction should be followed which makes for legality, must fall, where the contract is undoubtedly illegal. Here, we are unable to conceive of any construction of this contract which does not lead to the conclusion that the five cents per ton charge for each ton of coal transported over the Long Branch Coal Railroad was a charge for transportation, a consideration which defendant contracted to pay to have its coal transported over an existing railroad facility. The language used in the contract and the purpose for which defendant agreed to pay the five cents per ton can lead to no other conclusion.

The demurrer was correctly sustained, it affirmatively appearing from the complaint that plaintiff sought to compel defendant to pay a rate, charge or compensation for transportation of coal different from that included in the schedule of rates published and on file with the Alabama Public Service Commission.

The judgment is affirmed.

Affirmed.

GARDNER, C. J., and FOSTER and STAKELY, JJ., concur.